**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BOBBY GARRETT,

                    Plaintiff,

v.                                            Case No. 04-60197
                                              HON. MARIANNE O. BATTANI

CITY OF PONTIAC, and PONTIAC
POLICE OFFICER IAN KERSHAW,

                    Defendant.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS MOTION FOR SUMMARY JUDGEMENT**

## I.     INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgement (Doc. # 16).  Plaintiff brought a five count complaint alleging assault and battery, gross negligence, violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, and violation of 42 U.S.C. § 1983. Plaintiff alleges that defendant Kershaw violently and unreasonably assaulted him during an investigatory traffic stop.  Plaintiff also contends that defendant City of Pontiac ("City") failed to adequately train and supervise its police officers.  Defendants seek summary judgment, asserting that Plaintiff's claims are barred by qualified and governmental immunity, that Plaintiff cannot establish a *prima facie* case of assault and battery, and that supervisory liability cannot be imputed to the City.

## II.     STATEMENT OF FACTS

On September 14, 2002, there was a physical altercation between several individuals on Princeton Avenue in the City of Pontiac.  Plaintiff had driven two of these individuals to the location "to make a peace-offering."  Dep. of Garrett at 76.  Plaintiff never exited his vehicle.

After hearing police sirens, Plaintiff left the area, indicating in his deposition that "not knowing whether they are coming there or where they were going, I did not want to be there." Id., at 92.  Driving the speed limit, Plaintiff proceeded eastbound on Princeton Avenue.  While turning left on Price Street, Plaintiff noticed a police vehicle, for the first time, turning onto Princeton Avenue from Baldwin, with its lights flashing.  Plaintiff then observed the police vehicle turn onto Price Street, heading in Plaintiff's direction.  Following "the regular traffic thing" of getting out of the way of emergency vehicles, Plaintiff turned right onto East Sheffield, to "get out of their way."  Id., at 95.  Plaintiff proceeded to pull into the first driveway, indicating that he knew East Sheffield was a dead end street and that he was intending to use the driveway to turn around, and continue to his destination once the police vehicle passed.  Before making it into the driveway, the police vehicle pulled up behind Plaintiff with its lights still flashing.

To show his cooperation, Plaintiff put his hands out the driver-side window and waited for the police to instruct him.  Plaintiff contends that there were two officers present and that nothing was said to him prior to defendant Kershaw approaching his vehicle.  Plaintiff alleges that Kershaw opened the driver's side door, grabbed his collar with both hands, pulled him from the vehicle and slammed him to the ground on his right side.  Thereafter, Plaintiff asserts that Kershaw said, "Put your arms behind your back."  Apparently, not acting fast enough, Kershaw "booted" Plaintiff twice in the side, with the side of his foot, to try and secure Plaintiff's right arm behind his back.  Kershaw then dropped down on Plaintiff with his knee to fasten the handcuffs.  Plaintiff acknowledges that his large size made it hard to get his hands behind his back.

2

Plaintiff consented to an alcohol test and was charged with Operating Under the Influence of Liquor. After his release from the Pontiac Police Department, Plaintiff was treated at Pontiac Osteopathic Hospital for lacerations and abrasions on his face and arms, pain, and dizziness.

## III.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that

3

there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242,  256 (1986).  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgement may be granted.

Anderson, 477 U.S. at 249-50.  "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence itself need not be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of

4

evidence in support of the nonmovant is not sufficient; there must be sufficient evidence upon

which a jury could reasonably find for the nonmovant.  <u>Anderson</u>, 477 U.S. at 252.

## IV.    ANALYSIS

### A.    Procedural Argument.

Both parties raise procedural issues regarding the admissibility of Kershaw's police

report, the admissibility and timeliness of his expert's affidavit, and the timeliness of Plaintiff's

Response Brief.  These issues need to be raised independently.  Regardless, they were not

considered in this opinion.

### B.    Plaintiff's Excessive Force Claim.

The Fourth Amendment's "objectively reasonable" standard is utilized when analyzing

an excessive force claim.  <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989).  "In addressing an

excessive force claim brought under § 1983, analysis begins by identifying the specific

constitutional right allegedly infringed by the challenged application of force."  <u>Id</u>., at 394.

"Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop

of a free citizen, it is most properly characterized as one invoking the protections of the Fourth

Amendment, which guarantees citizens the right 'to be secure in their persons . . . against

unreasonable . . . seizures' of the person."  <u>Id</u>.

> In determining whether an officer's actions were reasonable, the specific facts of
> each case are key.  Courts should pay particular attention to "the severity of the
> crime at issue, whether the suspect poses an immediate threat to the safety of the
> officers or others, and whether he is actively resisting arrest or attempting to
> evade arrest by flight."  While courts must look to the totality of the
> circumstances in determining whether a seizure was reasonable, they must be sure
> to view those

5

facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Kostrzewa v. City of Troy, 247 F.3d 633, 639 (6th Cir. 2001)(citations omitted).

"Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers[,] violates the Fourth Amendment." Graham, 490 U.S. at 396. Although Plaintiff's characterizations may evoke a sense of excessive force, under the totality of the circumstances, the facts do not support such a claim.

Kershaw pursued and stopped Plaintiff's vehicle after being advised over the radio that the vehicle was observed leaving the scene of a violent fight, and thus, the occupant was a suspect. Plaintiff saw Kershaw's police car approaching from behind, and rather than pulling off to the side of the road to allow it to pass, Plaintiff turned onto a side street. A reasonable officer would perceive Plaintiff's actions as an attempt to elude police. Under these circumstances, Plaintiff could also be perceived as an immediate threat to Kershaw's safety.

During an investigatory stop or arrest, law enforcement officers are frequently required to make split-second judgements concerning the amount of force needed in situations that are "tense, uncertain, and rapidly evolving." Graham, 490 U.S. at 397. Here, Plaintiff voluntarily extended his hands out the window, which is not routine procedure for traffic stops. The officer did not know whether or not Plaintiff was armed. Plaintiff attempts to justify placing his hands out the window as behavior he learned from watching television programs such as "Cops." The defense opines that such behavior may reasonably indicate that Plaintiff may have had previous run-ins with the police. Regardless of the motivation, Plaintiff's behavior did not diminish the perceived threat to the officer. Further, though Plaintiff places no significance on it, both agree there was a size differential between the parties.

6

Kershaw admits that Plaintiff was pulled from his vehicle and forced to the ground. While Plaintiff insists that he was "thrown" or "slammed" to the ground, this evidence alone does not support a claim of excessive force.  See Darnell v. Caver, 1998 WL 416000 (6th Cir. July 7, 1998).  Further, the kicks to Plaintiff's side were reasonable.  Attempting to handcuff Plaintiff, Kershaw booted him twice with the side of his foot in order to move the arm on his right side, which Plaintiff admitted was difficult because of his large size.  "Based on the record, the use of force was measured, brief, and appropriate to accomplish the purposes of the stop to: 1) secure [Plaintiff] and his vehicle; 2) ensure that no criminal activity was afoot; and 3) preserve [Plaintiff's], the officer's, and the public's safety in light of the circumstances."  Janis v. Biesheuvel, 428 F.3d 795, 800 (8th Cir. 2005) (holding that the force used in removing a suspected intoxicated driver from his car and handcuffing him on the ground was not objectively unreasonable, in light of the officers' knowledge at the time).

Looking at the facts in light most favorable to Plaintiff, Defendant's actions were objectively reasonable, and Plaintiff has failed to state a legally sufficient claim for which relief can be granted.

### C.    Qualified Immunity

Qualified immunity is an affirmative defense that shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The United States Supreme Court has set forth a two-prong test to determine whether an officer-defendant is entitled to qualified immunity. <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001). The first prong requires the reviewing court to inquire whether the facts, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." <u>Id</u>., at 201. The court must "concentrate at the outset on the definition of the constitutional right and [then] determine whether on the facts alleged, a constitutional violation could be found." <u>Id</u>., at 207.

If a constitutional violation could be found, the second prong requires the court to decide whether a reasonable official would, at the time the act was committed, understand that his conduct violated that right. <u>Id</u>., at 201. A government official will be entitled to immunity as long as the conduct does not amount to a violation of a clearly established right of which a reasonable person would have known. <u>Harlow</u>, 457 U.S. at 818. A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." <u>Saucier</u>, 533 U.S. at 202.

Qualified immunity protects officers whose actions fall within the "hazy border between excessive and acceptable force." <u>Id</u>., at 206. "Both the right to be free from unreasonable seizures . . . and to be free from the use of excessive force under the Fourth Amendment . . . are clearly established [rights]." <u>Bucker v. Kilgore</u>, 36 F.3d 536, 539 (6th Cir. 1994).

> It is clear from this circuit's analysis in various excessive force decisions that . . . whether we grant qualified immunity in a particular case depends upon whether the officer did, in fact, use excessive force (*i.e.*, force that was no objectively reasonable). [T]o put it another way, if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful.

<u>Kostrzewa</u>, 247 F.3d at 641-42.

8

Viewing the evidence in a light most favorable to Plaintiff, Plaintiff has failed to meet his burden of proving that an issue of material fact exists as to whether the amount of force used was objectively unreasonable under the circumstances.  Because Plaintiff did not show that Kershaw violated his constitutional rights, we need not reach the second step of the analysis. Accordingly, Kershaw is entitled to qualified immunity.

**D.    Plaintiff's Gross Negligence Claim.**

Plaintiff claims that Kershaw's conduct breached the standard of care to the point of gross negligence under Michigan law, and therefore, Kershaw is not entitled to government immunity from tort liability afforded by MICH. COMP. LAWS ANN. § 691.1407.

Michigan's governmental immunity statute provides that:

[E]ach officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer . . . if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MICH. COMP. LAWS ANN. § 691.1407(2).  Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  MICH. COMP. LAWS ANN. § 691.1407(7)(a).

Because Kershaw's actions were, as explained above, objectively reasonable, Plaintiff cannot show that Kershaw exhibited the recklessness and substantial lack of concern required to

9

find gross negligence under § 691.1407.  Therefore, Kershaw is entitled to governmental immunity.

      **E.**    **Plaintiff's Assault and Battery Claim.**

Plaintiff claims that Kershaw's actions constitute assault and battery, which are intentional torts.

The Michigan Supreme Court has held that governmental immunity is not available as a defense to an intentional tort claim.  <u>Lockaby v. Wayne County</u>, 276 N.W.2d 1 (Mich. 1979), <u>citing</u> <u>McCann v. Michigan</u>, 247 N.W.2d 521 (Mich. 1976).

In <u>Burns v. Malak</u>, 897 F.Supp. 985, 988 (E.D. Mich. 1995) (Duggan, J.), this Court provided that "[i]n a given situation, a police officer may use substantial, but necessary, force to subdue a suspect, resulting in injury to the suspect.  In such situations, there would be no liability on the part of the police officer, not because of the defense of immunity, but because there was no wrongful conduct, *i.e.* no 'tort.'"  Thus, while it is well established that an officer may use such force as is reasonably necessary to effect a lawful arrest, an officer who uses excessive force may be held liable for assault and battery.  <u>White v. City of Vassar</u>, 403 N.W.2d 124, 130 (Mich. Ct. App. 1987).

As discussed above, Kershaw did not use more force than was reasonably necessary. Therefore, Plaintiff's assault and battery claim is dismissed.

      **F.**    **Plaintiff's Claim of Supervisory Liability Against the City of Pontiac.**

Plaintiff claims that the City of Pontiac's failure to train and supervise Pontiac officers represents the City's policy or custom of allowing officers to use excessive force against civilians.  Specifically, Plaintiff asserts that the City did not provide adequate training because

10

Kershaw did not follow the arrest guidelines in the hand book regarding traffic stops, and that the City knew of Kershaw's record involving two "high profile" cases, but failed to act after internal investigations were made regarding the incidents.

The Sixth Circuit interpreted the Supreme Court's finding in <u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986) to reaffirm that "a determinative issue in § 1983 claims against municipalities is whether the plaintiff has suffered a deprivation of his constitutional rights." <u>Doe v. Sullivan County, Tenn.</u>, 956 F.2d 545, 554 (6th Cir. 1992).  Because Plaintiff did not establish a constitutional violation of his rights, the Plaintiff's supervisory liability claims against the City must also fail.

## V.      CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: <u>March 27, 2006</u>

## CERTIFICATE OF SERVICE

Copies of this Order were served upon Diane L. McClain, W.  James Fitzgibbons, and Eric S. Goldstein, on this date electronically.

s/Bernadette M. Thebolt

DEPUTY CLERK

11

12